In re AMERICAN MOTOR CLUB, INC., Debtor.

AMERICAN MOTOR CLUB, INC., Plaintiff,

v.

Nicholas NEU, David Gershuny and Jacqueline Couch, as Executor of the Estate of Dante Senise, Defendants.

Bankruptcy No. 887–70763–260.
Adv. No. 189–0044.

United States Bankruptcy Court, E.D. New York.

June 15, 1993.

Rosner & Goodman, New York City by Marianne F. Murray, for Nicholas Neu and David Gershuny.

Philip Irwin Aaron, P.C., Syosset by Jules A. Epstein, for the Official Committee of Unsecured Creditors.

**DECISION ON MOTION SEEKING AN ORDER REQUESTING HONORABLE EDWARD J. KORMAN, UNITED STATES DISTRICT JUDGE, TO WITHDRAW REFERENCE OF THIS ADVERSARY PROCEEDING**

CONRAD B. DUBERSTEIN, Chief Judge.

This is an adversary proceeding in which the Official Committee of Unsecured Creditors (the "Committee") is the plaintiff seeking payment of certain promissory notes (collectively, the "Notes") allegedly executed and delivered by Nicholas Neu ("Neu"), David Gershuny ("Gershuny"), and Dante Senise ("Senise" or the "Senise Estate"), to American Motor Club, Inc., the debtor herein ("AMC" or the "Debtor"). All of the foregoing are the defendants in this action, except that defendant Jacqueline Couch is the executor of the estate of Dante Senise. Pursuant to this Court's order of April 30, 1991, the Committee was empowered to bring and defend all litigation proceedings by or against the Debtor.

This matter comes before the Court on the motion of Neu and Gershuny who seek an order requesting Honorable Edward J. Korman, United States District Judge, to withdraw reference of this adversary proceeding or, alternatively, stay the trial pending determination of an action instituted by the Committee in the District Court, titled *The Official Committee of Unsecured Creditors of American Motor Club, Inc. v. Bernard Gershuny, et. al.*, Docket No. 92 CV 2524 (EJK) (the "District Court Action"). For the reasons stated below, their motion is denied.

**FACTS**

AMC was a New York corporation which operated as a motor club offering benefits including pre-paid collision service repair of damaged motor vehicles. In 1985, the Attorney General of the State of New York, on behalf of the New York State Insurance Department (the "Insurance Dept."), commenced a special proceeding in the Supreme Court of the State of New York, New York County, against AMC and John Senise, an officer and shareholder of AMC. The Insurance Dept. viewed the benefits offered by AMC as unlicensed insurance and sought to (1) enjoin the sale of AMC's pre-paid collision service contracts (the "AMC contract"), (2) impose sanctions pursuant to N.Y.Ins.Law § 1102 (conducting an unlicensed insurance business) and § 2117 (the sale of unauthorized insurance), and (3) for damages and restitution pursuant to N.Y.Exec.Law § 63(12) (persistent illegality).

In its initial petition (the "Petition") submitted in the special proceeding, the Insurance Dept. argued that the AMC contract constituted insurance since, under the contract, a member's only obligation for repairs was the initial annual membership fee and a fixed service fee per repair. The Insurance Dept. deemed the annual fee and service fee analogous to a premium and deductible, respectively.

AMC answered the petition and filed a cross motion to dismiss the proceeding. As

a defense, AMC argued that the annual membership fee was not a premium since insurance premiums are not credited to past or future claims, or to future premiums for policy renewals, and therefore the AMC contract was not insurance.

However, on January 14, 1987, the Supreme Court of the State of New York, New York County, decided that the AMC contract was unlicensed insurance. *People v. American Motor Club, Inc.*, No. 43148/85, slip op. (N.Y.Sup.Ct. Jan. 14, 1987). The court enjoined further sales of the AMC contracts, but denied the imposition of sanctions, damages or restitution, finding no intentional or wilful violation of the N.Y.Ins.Law. *Id.* at 2.

Upon a motion to reargue by the Insurance Dept., the Supreme Court of the State of New York, New York County, by Honorable Milton Richardson, issued a decision on April 4, 1987, which added AMC's president from February, 1985, through March 3, 1987, Nicholas Neu as a party and imposed a $5,001,000 fine against AMC, Neu and Senise, holding them jointly and severally liable for multiple violations of N.Y. Ins. Law § 1102. *People v. American Motor Club, Inc.*, Index No. 43148/85, slip op. (N.Y.Sup.Ct. Apr. 4, 1987).

Subsequently, the three parties appealed this decision. On May 19, 1987, AMC filed with this Court, a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

It is to be noted that early in this case, it became apparent that none of the officers of the Debtor were continuing on in the operations of the Debtor's affairs. Consequently, an Order was entered by this Court, whereby the Official Committee of Unsecured Creditors (the "Committee") was substituted as the party plaintiff or defendant in all pending litigation concerning the Debtor and was authorized and empowered to prosecute, defend, compromise or settle, release or abandon any claim or cause of action asserted or assertable by or against the Debtor. The Committee, by its counsel, has proceeded with the ongoing liquidation of the Debtor in

this Chapter 11 case in lieu of converting it to a case under Chapter 7.

On October 29, 1987, a decision was issued by the Appellate Division, First Department, pursuant to an appeal of the April 14, 1987, decision. *People v. American Motor Club, Inc.*, 133 A.D.2d 593, 520 N.Y.S.2d 383 (N.Y.App.Div.1987). The court held that Neu had been properly joined as a party, but struck the provisions that found Neu and Senise jointly and severally liable for the fine, due to the fact that Neu had not been afforded notice of the State's intention to seek sanctions against him personally and that Senise had never been charged with violating N.Y.Ins. Law § 1102. *Id.* at 595, 520 N.Y.S.2d at 385. However, the fine was affirmed against AMC and its argument that the AMC contract had been based upon other contracts which had not been held to constitute illegal insurance was rejected. The court found that "the other plans to which comparison was made differed materially and legally." *Id.* On March 31, 1988, a motion for leave to reargue was denied by the Appellate Division. *People v. American Motor Club, Inc.*, 138 A.D.2d 988, 527 N.Y.S.2d 331 (N.Y.App.Div.1988). Subsequently, a motion for leave to appeal to the New York Court of Appeals was denied on July 12, 1988. *People v. American Motor Club, Inc.*, 72 N.Y.2d 805, 532 N.Y.S.2d 755, 528 N.E.2d 1228 (1988). On July 7, 1992, the Court of Appeals dismissed Neu's latest appeal stemming from the Insurance Dept.'s action. *People v. American Motor Club, Inc.*, 80 N.Y.2d 893, 587 N.Y.S.2d 909, 600 N.E.2d 636 (1992).

On April 18, 1989, the Committee commenced the within adversary proceeding against Neu, Gershuny and the Senise Estate, seeking payment of the aforementioned promissory notes allegedly executed and delivered by the defendants to the Debtor.

It is alleged in the complaint that, on or about May 2, 1986, Neu executed and delivered to the Debtor two promissory notes: one in the sum of $300,000.00, payable on May 2, 1988, ("Neu Note I") and a second in the sum of $305,000.00 payable at matu-

rity on January 31, 1987 ("Neu Note II"). In addition, Neu Note I is presently consolidated with claims in another adversary proceeding brought by the Committee against Neu's wife, Marie Neu, in which it seeks to impress a constructive trust and equitable lien on the Neus' residence.

The Committee also claims that Gershuny executed and delivered two promissory notes, the first executed on May 2, 1986, in the amount of $180,000.00 ("Gershuny Note I") and the second on May 30, 1986, in the sum of $181,852.00 ("Gershuny Note II"). In addition, the Committee claims that Senise executed and delivered to the Debtor a promissory note in the sum of $305,000.00 payable on January 31, 1987 (the "Senise Note"). The Committee asserts that Neu, Gershuny, and the Senise Estate have refused to pay the Notes upon their maturity.

Neu contends that prior to January, 1987, he received payments of $300,000.00 and $305,000.00 as commissions and compensation in consideration for services rendered. Therefore, since he did not receive any additional consideration upon signing the notes, they are void for lack of consideration. In support, Neu alleges that these monies were reported as income on his 1987 State and Federal income tax forms. Neu further contends that Philip Plaskin, President of International Tillex Enterprises, Ltd. ("Tillex"), the Debtor's parent corporation, tacitly approved of the payment as compensation in connection with limousine livery services.

Neu maintains that in late January or early February of 1987, Sam Ford ("Ford"), acting as the controlling party and designee of Tillex, requested that Neu sign the Notes to enable Tillex to represent prior compensation as loans on its financial statements which would be disseminated to the public.

Furthermore, as an inducement to sign the notes, Neu claims that Ford stated that he would receive an employment contract and/or voting trust agreement ensuring employment in the Debtor's senior management for a period of five years, and during the term of this employment, the Notes would be forgiven. However, in the event that he did not sign the Notes, his employment with the Debtor would be terminated. Neu argues that the Notes are void as induced by fraud based on the fact that at the time Ford represented to Neu that the Notes would be forgiven, Ford knew it to be false in that neither he nor Tillex had any intention to forgive the Notes and that Ford had already instructed management of British Insurance Management Co. ("BIM"), Tillex's subsidiary and Debtor's direct parent, to vote to remove the Debtor's Board of Directors and fire Neu.

The Senise Estate argues that it is not liable to the Debtor for the repayment of the Senise Note due to the fact that the signature on the note is a forgery. Additionally, the Senise Estate alleges that even if Dante Senise did sign the Senise Note, it is void for want of consideration. In support of this claim, the Senise Estate offers the affidavits of Catherine Senise, Dante Senise's widow, who states that Dante Senise never received the $305,000.00 from AMC that the Senise Note purports to evidence, and of Jacqueline Couch, Senise's daughter and the executrix of Dante Senise's estate, who claims that the checks Dante Senise received from AMC were salary payments of $3,000.00 per week and commissions on the sale of AMC contracts to livery services.

On April 11, 1990, the Committee commenced an adversary proceeding against British Insurance Management Co., U.S. Risk Managers, David Gershuny, and others, seeking to recover $700,000 allegedly transferred to these defendants with the intent to defraud the Debtor and its creditors (the "U.S. Risk Proceeding").

On May 29, 1992, the Committee filed an action in the United States District Court seeking to recover millions of dollars allegedly looted by Gershuny, Neu and others (collectively, the "Defendants") from the Debtor. The complaint alleges the Defendants syphoned millions of dollars of the Debtor's assets to dummy, off-shore corporations in the guise of reinsurance. In addition, the complaint alleges the Defendants syphoned approximately two million

dollars of the Debtor's assets to acquire shares of Northeast Insurance Company, a publicly traded insurance company based in the state of Maine.

Defendants Gershuny and Neu filed a motion in the District Court seeking an order (a) dismissing the action based upon the Marie Neu note and U.S. Risk proceedings, (b) removing the bankruptcy adversary proceedings and consolidating them with the District Court action, or, (c) staying the bankruptcy proceedings until final determination of this action. The defendants argued that the District Court Action was predicated on the same transactions involved in the adversary proceedings before the bankruptcy court.

In opposition, the Committee argued that the adversary proceedings before the Bankruptcy Court relate to other transactions, unrelated to either syphoning assets to purported off-shore reinsurance companies or the purchase of the Northeast Insurance Company shares. Rather, the adversary proceedings concern the enforcement of promissory notes executed by Neu, Gershuny and Senise, as well as monies diverted to Marie Neu to purchase a luxury home in Westchester County, New York. In addition, the Committee opposed the Defendants' motion on the basis that the adversary proceedings were scheduled to be tried shortly before the Bankruptcy Court.

During argument of the motion, Judge Korman expressed his view that the Defendants would not be prejudiced by having the Marie Neu and note proceedings come to trial in this Court in advance of trial of the District Court Action. Among other things, Judge Korman noted that a disposition by the Bankruptcy Court in favor of the Committee here in the adversary proceedings would reduce the number of issues to be tried in the District Court by concluding litigation regarding Neu and Gershuny's liability for the notes inasmuch as the Bankruptcy Judge had greater familiarity with the facts. Pursuant to an order entered by Judge Korman, the Defendant's motion as to the note and Marie Neu proceedings was denied

without prejudice to defendants' application to the Bankruptcy Court ... to have the Bankruptcy Court request the District Court to withdraw the reference of the [note and Marie Neu] adversary proceedings from the bankruptcy court.

However, the U.S. Risk Proceeding was removed and consolidated with the District Court Action.

On November 4, 1992, Gershuny and Neu filed the present motion for an order requesting Honorable Edward J. Korman to withdraw reference of adversary proceeding numbers 189–0044–260 and 887–70763–260, the aforementioned adversary proceedings before this Court, or, alternatively, stay trial pending determination of the action entitled *The Official Committee of Unsecured Creditors of American Motor Club, Inc. v. Bernard Gershuny, et al,* Docket No. 92 CV 2524 (EJK), which is presently before the United States District Court for the Eastern District of New York.

### DISCUSSION

◾ As a result of the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* Congress passed 28 U.S.C. § 1334, which provides that the district courts shall have original and exclusive jurisdiction of all cases under Title 11. Under 28 U.S.C. § 157(a), however, district courts shall refer bankruptcy cases to the bankruptcy courts. Pursuant to the standing order of this district, dated August 28, 1986, all bankruptcy cases in the Eastern District of New York are so referred. Section 157(d) of Title 28, on the other hand, provides that:

The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both Title 11 and other laws of the United States for

regulating organization for activities affecting interstate commerce. 28 U.S.C. § 157(d). Accordingly, this Court may not hear or determine a motion to withdraw reference of a proceeding. *In re Oneida Motor Freight, Inc.*, 86 B.R. 344, 346–47 (Bankr.D.N.J.1987). This matter is left to the exclusive jurisdiction of the district court. 28 U.S.C. § 157(d); Fed. R.Bankr.P. 5011(a); *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir.1991); *In re Ethington*, 150 B.R. 48, 52–53 (Bankr.D.Idaho1993).

 However, pursuant to Judge Korman's order, the Defendants may file an application to this Court "to have the Bankruptcy Court *request* the District Court to withdraw the reference of the adversary proceeding from the Bankruptcy Court" (emphasis added). Accordingly, this Court may consider the present motion to withdraw reference of the two pending adversary proceedings before it.

 Withdrawal of reference is permitted only if the motion is for "cause shown." 28 U.S.C. § 157(d). Neither the Bankruptcy Code nor applicable case law within the Second Circuit have defined "cause" for permissive withdrawal of a bankruptcy reference pursuant to § 157(d). *In re Oil Co.*, 140 B.R. 30 (E.D.N.Y.1992); *In re Southold Dev. Corp.*, 129 B.R. 18, 20 (E.D.N.Y. 1991) (citing 1 Lawrence P. King et al., Collier on Bankruptcy, ¶ 3.01, at 3–63 (15th ed.1990)); *In re 1733 Ridge Rd. East, Inc. (Cooper v. Howitt)*, 125 B.R. 722, 724–25 (W.D.N.Y.1991). Nevertheless, courts have listed the following factors that may be considered in determining a motion for permissive withdrawal under § 157(d): (1) uniformity in bankruptcy administration; (2) reduction of forum shopping and confusion; (3) fostering the economical use of debtors' and creditors' resources; and (4) expediting the bankruptcy process. *In re*

*Pruitt*, 910 F.2d 1160, 1168 (3rd Cir.1990) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985)); *Oil Co.*, 140 B.R. at 33; *1733 Ridge Rd. East*, 125 B.R. at 724–25; *Century Hotels v. U.S.*, No. CIV.A. 88–707, 1988 WL 16425 (Bankr.E.D.La. Feb. 24, 1988).

 In the case before this Court, the movants have shown no cause for withdrawing the reference of this case from the bankruptcy court. The adversary proceedings here relate to transactions unrelated to either syphoning assets to purported off shore reinsurance companies, or the purchase of the Northeast Insurance Company shares. The adversary proceedings concern enforcement of promissory notes executed by the defendants and monies diverted to Marie Neu to purchase a luxury home in Westchester County.[1] Accordingly, this Court can find no reason to request the District Court to withdraw reference of the adversary proceedings as it is a core proceeding pursuant to § 157(b)(2)(E) and (O) concerning an order to turn over property of the estate. Consequently, the motion of Neu and Gershuny to request Honorable Edward J. Korman to withdraw reference of these adversary proceedings is denied.

SUBMIT AN ORDER CONSISTENT WITH THIS OPINION.

---

1. It is to be noted that even if a request for a jury trial is made, this Court finds permissive withdrawal of the reference inappropriate. In the event the defendants make such request, this Court may conduct a jury trial in a core proceeding. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989); *In re Ben Cooper, Inc.*, 896 F.2d 1394, 1400 (2d Cir.1990), *cert. granted, Ins. Co. of State of Pa. v. Ben Cooper, Inc.*, 497 U.S. 1023, 110 S.Ct. 3269, 111 L.Ed.2d 779 (1990), *vacated,* 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *on remand,* 924 F.2d 36 (2d Cir.1991), *cert. denied,* —— U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991). *See also In re Coin Phones, Inc.*, 153 B.R. 135 (Bankr.S.D.N.Y.1992) (no reason to recommend withdrawal of reference of fraudulent transfer action even where request for jury trial is made).