In the Matter of Delbert L. SADLER and Patsy A. Sadler, Debtors.

**Appeal of FIRST NATIONAL BANK OF PERRY COUNTY, INDIANA.**

No. 91–1021.

United States Court of Appeals, Seventh Circuit.

Argued June 3, 1991.

Decided July 1, 1991.

James G. Tyler, Tell City, Ind., for appellant.

Russ Wilkey, Owensboro, Ky., for debtors-appellees.

Before CUDAHY, EASTERBROOK and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Delbert and Patsy Sadler run a family farm. Chapter 12 of the Bankruptcy Code offers benefits for family farmers. The Sadlers filed a petition under Chapter 13 of the 1978 Code in September 1986, two months before Chapter 12 took effect.[†] The Sadlers used the bankruptcy law to avoid a lien the First National Bank of Perry County had obtained on their crops. The Bank was one of their principal lenders, advancing some $173,000. When the Sadlers did not pay, the Bank filed suit and obtained a prejudgment attachment. This lien, inducing the sheriff to seize the Sadlers' corn and soybean crops, led to the Chapter 13 filing. The bankruptcy judge set aside the lien as a voidable preference—a transfer without new consideration during the 90 days before the filing. 11 U.S.C. § 547(b)(4)(A). The money from the sale of the crops was segregated pending further proceedings in the bankruptcy case.

In February 1987 the bankruptcy judge approved the Sadlers' plan of payments under Chapter 13. Two months later the Sadlers decided they would be better off under Chapter 12. They did not try to

---

[†] The Sadlers filed their petition on September 24, 1986. Chapter 12 was created by legislation signed by the President on October 27, 1986, and going into force 30 days later. Section 302(a) of the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub.L. 99–554, 100 Stat. 3088.

convert directly from Chapter 13 to Chapter 12. Instead they asked the bankruptcy judge to convert the Chapter 13 case to Chapter 7, and then convert the Chapter 7 case to Chapter 12. The Bank and two other creditors objected. Bankruptcy Judge Kearns denied the Sadlers' motion. Although 11 U.S.C. § 1307(a) gave the Sadlers every right to convert to Chapter 7 on whim, there is no parallel right to move to Chapter 12. Judge Kearns concluded, on the basis of § 302(c)(1) of the statute creating Chapter 12, that cases filed before Chapter 12's effective date may not be converted to Chapter 12. See *In re Sinclair*, 870 F.2d 1340 (7th Cir.1989). He suggested, however, that the Sadlers consider dismissing their Chapter 13 proceeding, a matter of right under 11 U.S.C. § 1307(b), and filing a new Chapter 12 case. The Sadlers took him up on that suggestion, commencing a Chapter 12 proceeding in July 1987. We must decide the effect of this dismissal and reinstitution on the use of § 547(b) to avoid the Bank's lien.

■ A case converted from one chapter of the 1978 Code to another retains all of the original filing dates. 11 U.S.C. § 348(a). When a proceeding is dismissed, however, transfers avoided under § 547 are reinstated. 11 U.S.C. § 349(b)(1)(B). Any new filing takes its own date—which here was substantially more than 90 days after the Bank's lien attached. Not surprisingly, the Bank believes that it is entitled to the money from the sale of the corn and soybeans in 1986. The Sadlers commenced an adversary proceeding against the Bank in the Chapter 12 case, contending that the filing of the Chapter 13 case "tolled" the time for avoiding preferences. The bankruptcy judge ruled in the Sadlers' favor, explaining that relation back "effectuates spirit and purposes of the Bankruptcy Code. Although unable to convert, the debtors' dismissal and immediate refiling on the next day should still have the same relation back as if this case had been converted, especially since the debtors utilized this method at this Court's suggestion."

The district court affirmed on a different theory. The district judge believed that conversion from Chapter 13 to Chapter 12 was desirable. Only the Bank's objection led the bankruptcy judge to deny the Sadlers' motion. Section 349(b) offered the bankruptcy judge a way to give the Sadlers the benefit of the earlier filing date despite the denial of conversion: the dismissal of a case reinstates avoided preferences "[u]nless the court, for cause, orders otherwise". The district judge concluded that the benefits of conversion to Chapter 12, coupled with the desire to avoid a windfall for the Bank, were "cause" to specify that the dismissal did not reinstate the Bank's lien.

■ The difficulty with the district court's approach is that § 302(c)(1) bans the conversion of pending Chapter 13 cases to Chapter 12. *Sinclair*. More: both the bankruptcy judge and the district judge viewed any inability to convert as something to be overcome rather than respected. *Sinclair* addressed this possibility, too:

> The debtors made an alternative request. They asked the bankruptcy judge to allow them to dismiss their Chapter 11 case and start a new one under Chapter 12. This would avoid the ban in § 302(c)(1).... The [debtors] do not want to dismiss the case with prejudice, pay all of their accrued debts, and then file a fresh bankruptcy action that could go forward from the date of refiling. They want, instead, to file a Chapter 12 case that would be administered as if it had been commenced [when the Chapter 11 case was filed]. This is conversion by another name. Statutes control more than nomenclature; they are addressed to conduct. Proposals for conversion by another name are proposals for conversion. This one was properly rejected on the authority of § 302(c)(1).

870 F.2d at 1345. The bankruptcy and district judges gave the Sadlers exactly the relief *Sinclair* says courts may not provide.

■ Does § 349(b) afford passage around *Sinclair*? We think not. The bankruptcy court did not find "cause" under § 349(b) and was never asked to.

Counsel for the Sadlers explained why at oral argument: he took over the case from another lawyer and was unaware that the Bank's lien had been avoided under § 547. This also means that the bankruptcy judge's invitation is not itself "cause". The judge was not promising the Sadlers that dismissal and reinstatement would be without consequence. The subject never came up. At all events, a bankruptcy judge may not give away the rights of creditors by promising debtors that they are entitled to act in a particular way. Whether the judge is *correct* in making a prediction about the consequences of a particular action is a question that may be pursued on appeal. Cf. *Osterneck v. Ernst & Whinney,* 489 U.S. 169, 179, 109 S.Ct. 987, 993, 103 L.Ed.2d 146 (1989), explaining that equitable exceptions to timing rules apply, at best, only if "a party has performed an act which, if properly done, would [give him more time] ... and has received specific assurance by a judicial officer that this act has been properly done." Given *Sinclair* there was no "proper" way to use dismissal and refiling to produce the same effect as conversion; anyway, the bankruptcy judge did not give "specific assurance" that dismissal and reinstitution would maintain the original filing date in any later preference action under Chapter 12.

■■■ "Cause" under § 349(b) means an acceptable reason. Desire to make an end run around a statute is not an adequate reason. Congress specified that Chapter 13 cases pending on the effective date of Chapter 12 may not be converted. It would defeat this express decision to treat as "cause" the debtors' wish to file a new Chapter 12 case with all dates relating back to the original Chapter 13 proceeding. That would be, as we remarked in *Sinclair,* conversion by another name. It is not part of the judicial office to seek out creative ways to defeat statutes.

■■■ Although the Sadlers contend that equities cut in their favor, there is no equitable claim to achieve what Congress forbade. The Sadlers just might have an equitable argument if they wanted to return to Chapter 13 and carry out the plan confirmed in February 1987. They do not ask for this, however—they want to keep the benefits of Chapter 12 and to retain the funds from the corn and soybean crops too. It is too late to unscramble these eggs; the Sadlers have gone four years without making the payments called for in their Chapter 13 plan. They do not want an equitable *restoration* of the position they would have occupied but for the dismissal; they seek the full benefits of conversion, the very thing *Sinclair* holds they may not have.

Other creditors would have better equitable claims than do the Sadlers. Preference actions are designed to achieve ratable distributions *among creditors.* Several lenders in addition to the Bank filed claims in the Chapter 13 proceeding. These creditors might be entitled to protest the dismissal and refiling that denied them access to any share of the cash realized from the 1986 corn and soybean crops. Most if not all of the cases dealing with "cause" under § 349(b) arose from efforts by creditors to retain the benefits of recoveries by the estate. E.g., *In re Gonic Realty Trust,* 909 F.2d 624, 627–28 (1st Cir.1990); *United States v. Standard State Bank,* 905 F.2d 185 (8th Cir.1990); *In re Professional Success Seminars International, Inc.,* 22 B.R. 554 (Bkrtcy.S.D.Fla.1982). None of the Sadlers' other creditors has sought relief. As things stand, the only claimants to the funds are the Sadlers and the Bank. Between the two, the Bank has the better claim: the Sadlers borrowed money that they have yet to repay. See *In re Case,* 27 B.R. 844 (Bkrtcy.D.S.D.1983). The Sadlers used the dismissal-refiling maneuver not to protect the rights of their other creditors but to divert more money to themselves. Nothing in the 1978 Code allows them to succeed.

REVERSED.

CUDAHY, Circuit Judge, concurring.

I agree that under the particular circumstances of this case (pending when Chapter 12 was enacted) there cannot be "cause" in accordance with section 349(b) for refusing to reinstate avoided preferences. Some language in the majority opinion might lead

one to conclude that there could never be such "cause" if the result were to preserve an avoidance in the transition from a Chapter 13 case to a Chapter 12 case. But it is not clear to me that the policy of section 302(c)(1) of Public Law 99–554 should be regarded as so unyielding as to render the exception to section 349(b) a dead letter under all circumstances. I have in mind circumstances where the interests of unsecured creditors other than the subject of the avoided transfer are implicated. The majority opinion suggests the possibility of equitable considerations in these circumstances. Of course, such considerations exist, and we should be understood to be acting today only with respect to the specific facts before us. Section 302(c)(1) of Public Law 99–554 as construed in *Sinclair* certainly precludes conversion directly or indirectly from Chapter 13 cases pending before the enactment of Chapter 12 to Chapter 12. But if such "conversion" occurs without objection, as here, in face of the prohibition, the "cause" mentioned in section 349(b) need not always be conclusively foreclosed if the interests of other creditors are involved. In this respect, the legislative history of section 302(c)(1) apparently contains no reference to section 349(b) or the subject that it addresses. The above considerations apparently become more relevant if and when debtors seek dismissal of post-enactment Chapter 13 cases, a circumstance to which section 302(c)(1) is not directed.