In re Steven J. DERRICK, Margaret M. Derrick, Debtors.

Steven J. DERRICK and Margaret M. Derrick, Plaintiffs,

v.

RICHARD L. GRAFE COMMODITIES, INC., Defendant.

Bankruptcy No. 93–10404–12.
Adv. No. A93–1028–12.

United States Bankruptcy Court, W.D. Wisconsin.

Oct. 13, 1995.

Guy K. Fish, Milton, WI, for Plaintiffs.

William P. Skemp, La Crosse, WI, for Defendant.

*MEMORANDUM OPINION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW*

THOMAS S. UTSCHIG, Bankruptcy Judge.

Presently before the Court is the latest chapter in the continuing saga of these debtors, who in the course of the past several years have exhausted nearly every option the bankruptcy code has to offer. Given the rather torturous procedural history involved, a chronology of the events relevant to the dispute at hand must be established at the outset. These events are as follows:

10/29/92 Richard L. Grafe Commodities, Inc. ("Grafe") obtains a state court judgment against Steven Derrick.

11/16/92 Grafe's judgment is docketed in Wisconsin and Iowa.

02/12/93 The debtors file their chapter 12 case.

02/17/93 The debtors commence an adversary proceeding, seeking to void Grafe's judicial lien.

10/18/93 The debtors' chapter 12 plan is confirmed.

03/12/94 The debtors and Grafe execute a stipulation settling the dispute over Grafe's claim.

03/14/94 An order is entered in the adversary proceeding voiding Grafe's judicial lien.

09/23/94 The debtors voluntarily dismiss their chapter 12 case.

10/27/94 The debtors file a chapter 11 case.

01/10/95 The debtors convert the chapter 11 case to chapter 7.

06/01/95 The debtors receive a chapter 7 discharge.

06/16/95 Grafe files a motion to vacate the judgment entered in the adversary proceeding which avoided its judicial lien.

The matter now before the Court is Grafe's motion to vacate the March 14, 1994, order which avoided its judgment lien as a preference under 11 U.S.C. § 547. The basis for Grafe's motion is that the chapter 12 proceeding in which the adversary took place was dismissed prior to the completion of the debtors' confirmed plan, and 11 U.S.C. § 349(b)(1)(B) provides for the reinstatement of any preferential transfer avoided in the course of a dismissed case. The debtors oppose the motion, and submit that the Court should deny Grafe's request on a variety of equitable grounds, chief among them Grafe's purported delay in seeking reinstatement of the lien, the debtors' intervening chapter 7 discharge, and the presence of a stipulation between the parties regarding Grafe's claim. Grafe is represented by William P. Skemp, and the debtors are represented by Guy K. Fish.

The facts which surround the bare bones of the chronology set forth above are as follows. Grafe obtained a judgment against Steven Derrick on October 29, 1992, and subsequently docketed the judgment so as to create a judgment lien against certain property. The judgment was apparently not only docketed in Wisconsin but Iowa as well. Thereafter, on February 12, 1993, the debtors filed their chapter 12 petition. In the course of the chapter 12 proceeding, the debtors initiated this adversary proceeding against Grafe, seeking to avoid the judgment lien as a preferential transfer under 11 U.S.C. § 547. The adversary proceeding resulted in the entry of a judgment against Grafe avoiding the lien. The parties also entered into a stipulation in which the debtors agreed to pay Grafe a reduced amount in full satisfaction of its claims.

On September 23, 1994, the debtors filed an application to dismiss their chapter 12 case pursuant to 11 U.S.C. § 1208(b), and the case was dismissed on that date.[1] The debtors subsequently filed for chapter 11 relief, and thereafter converted that case to chapter 7. The debtors received a discharge in their chapter 7 on June 1, 1995. The issue now before the Court is the effect, if any, of the dismissal of the chapter 12 proceeding upon the avoidance of Grafe's lien. For a resolution of this issue, the Court must begin with 11 U.S.C. § 349(b), which provides in pertinent part that:

Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—

(1) reinstates—

. . . . .

(B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and

. . . . .

The general idea behind § 349 is that the dismissal of a bankruptcy case should re-establish the rights of the parties as they existed when the petition was filed. *In re Jones*, 152 B.R. 155, 180 (Bankr. E.D.Mich.1993). Indeed, unless the court indicates otherwise, the general effect of an order of dismissal is to "restore the status quo ante;" it is as if the bankruptcy petition had never been filed. *In re Lewis & Coulter, Inc.*, 159 B.R. 188, 190 (Bankr.W.D.Pa.1993); *In re Lawson*, 156 B.R. 43, 45 (9th Cir. BAP 1993); *see also Production Credit Ass'n of*

---

**1.** The chapter 12 trustee subsequently objected to the dismissal, and the Court overruled these objections by an order dated October 6, 1994.

*Midlands v. Farm & Town Industries, Inc.,* 518 N.W.2d 339, 343 (Iowa 1994) (dismissal of chapter 12 case basically restores parties to position they would have had if bankruptcy case had not been filed, unless bankruptcy court enters order protecting rights acquired in reliance upon bankruptcy case). Upon dismissal, the ownership rights to all property of the estate revest in the debtor, subject to all encumbrances that existed prior to the bankruptcy. *In re Nash,* 765 F.2d 1410, 1414 (9th Cir.1985); *In re Ethington,* 150 B.R. 48, 49 (Bankr.D.Idaho 1993).

■ Therefore, when a proceeding is dismissed, preferential transfers avoided under § 547, such as Grafe's judgment lien, are reinstated. *Matter of Sadler,* 935 F.2d 918, 920 (7th Cir.1991); *see also In re Smith,* 155 B.R. 145, 148 n. 4 (Bankr.S.D.W.Va.1993) (if bankruptcy is dismissed, so that avoidance of transfer is no longer beneficial to all creditors, but only to the debtor, transfer will be reinstated); *Matter of Mel–O–Gold, Inc.,* 88 B.R. 205, 209 (Bankr.S.D.Iowa 1988) (upon dismissal of case, preferential transfer is reinstated). The only exception to reinstatement is when the court, "for cause," orders otherwise. *Sadler,* 935 F.2d at 920. While "cause" is not defined in the statute, there must be an "acceptable reason" to alter the normal impact of § 349(b)(1)(B). *Id.* at 921.

■ Given that there need only be an "acceptable reason" for denying reinstatement of a lien, "cause" is clearly a loosely defined concept, left to the discretion of the court and the peculiarities of the circumstances. Nonetheless, certain basic principles may guide the court's inquiry. The legislative history to § 349 states:

> The basic purpose of the subsection is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case.... *Where there is a question over the scope of the subsection, the court will make the appropriate orders to protect rights acquired in reliance on the bankruptcy case.*

H.R.Rep. No. 595, 95th Cong., 1st Sess., 338 (1977); 1978 U.S.Code Cong. & Admin.News, 5963, 6294 (emphasis added). As a result, in determining whether "cause" exists under § 349(b), the court's focus should be toward protecting rights acquired in reliance upon the bankruptcy, and in the absence of such interests there is no basis for altering the natural impact of the section. *Ethington,* 150 B.R. at 50; *Sadler,* 935 F.2d at 921. Furthermore, the concern should be for the interests of creditors or other third parties who may suffer injury, rather than the debtor. *Smith,* 155 B.R. at 148 n. 4; *see also In re Greenbelt Co-op., Inc.,* 124 B.R. 465, 471 (Bankr.D.Md.1991).

■ In this regard, it must be remembered that the underlying intent behind the code is not only to provide financial relief for overburdened debtors, but also to offer equitable treatment to creditors. Subordinating the debtor's interests to those of the creditors when considering the effects of dismissal is in harmony with this twofold purpose. The rights the debtor acquires as a result of the bankruptcy are usually an extension of the debtor's ability to abide by the terms of the code, and a debtor who is unwilling or unable to comply with the code generally should not receive the benefits of bankruptcy once the case is dismissed. *See Jones,* 152 B.R. at 182 (fundamental principle underlying § 349 is that debtor who fails to abide by plan will lose "remarkable benefit" of code); *see also In re Wolf,* 162 B.R. 98 (Bankr. D.N.J.1993); *In re Evaul,* 152 B.R. 31 (Bankr.W.D.N.Y.1993). As the Seventh Circuit stated in *Sadler,* when considering whether "cause" existed to prevent lien reinstatement:

> Other creditors would have better equitable claims than do the [debtors]. Preference actions are designed to achieve ratable distributions *among creditors.* Several lenders in addition to the [creditor] filed claims in the Chapter 13 proceeding. These creditors might be entitled to protest the dismissal and refiling that denied them access to any share of the cash realized [from reinstatement of the creditor's lien].... As things stand, the only claimants to the funds are the [debtors] and the [creditor]. Between the two, the [creditor]

has the better claim: the [debtors] borrowed money that they have yet to repay. 935 F.2d at 921.

■ A finding of "cause" therefore requires the presence of a superior right or interest which was gained in the course of or in reliance upon the bankruptcy. For example, in *Jones* the court noted that lien reinstatement might be denied if the property to which the lien would attach had been transferred to a third party. 152 B.R. at 180. In another case, *In re Toronto*, 165 B.R. 746 (Bankr.D.Conn.1994), the court discussed the competing interests at stake in the context of determining whether to dismiss or convert a case. The court observed:

> If this case is dismissed, § 349(b) would operate to reinstate the movant's lien and vacate the judgment against the movant in the preference adversary proceeding, unless [it is] ordered for cause that it not be reinstated. [cite omitted]. Preserving a judgment avoiding a preference for use in a subsequent case might be cause for such an order.... [i]f [the court] dismiss[es] the case, do[es] not order the preference judgment preserved, and the debtors file no new petition, the movant would be able to enforce its admittedly preferential attachment. That result would benefit the movant at the expense of all unsecured creditors and the debtors, and would permit the movant to reap the benefits of its attachment contrary to code policy ... [a]ssuming [the court] could find cause to preserve the judgment, the windfall [if the debtors do not file another petition] would be to the debtors at the expense of all of the creditors.

165 B.R. at 757. In the *Toronto* court's opinion, the debtor's interests only become significant in the context of a refiling after dismissal. Absent such a refiling, preserving the avoidance of a lien would result in a "windfall" to the debtor, which simply does not rise to the level of "cause" under § 349(b). *Id.; see also Greenbelt Co-op.*, 124 B.R. at 471 (reinstatement of avoided transfer upon dismissal "prevents a windfall for a debtor outside a bankruptcy case").

However, to equate dismissal with some form of time travel, unceremoniously dumping the parties where they were the moment before the debtor made the fateful choice to file bankruptcy, would be to say both too much and too little about the effect of § 349. Implementing the code's directive that dismissal is to undo the bankruptcy case "as far as practicable," *see Ethington*, 150 B.R. at 50, is occasionally more difficult than it might appear at first blush. The interpretive difficulties arise in part from the fact that although § 349 enumerates numerous sections of the code which are affected by a dismissal, it does not expressly reverse *everything*. This lack of a blanket provision has lead some courts to conclude that some actions or decisions which occur in the course of a bankruptcy are beyond the scope of § 349. *See In re Searles*, 70 B.R. 266, 270 (D.R.I. 1987); *In re BSL Operating Corp.*, 57 B.R. 945, 952 (Bankr.S.D.N.Y.1986) *see also Matter of Kucera*, 123 B.R. 852, 854 (Bankr. D.Neb.1990).

In this regard, one of the more conceptually challenging issues involving § 349(b)(1)(B) is whether the entry of a dismissal order after the confirmation of a reorganization plan operates to reinstate a lien avoided prior to confirmation. Section 349 does not expressly revoke confirmation, which might suggest a conflict between the provisions concerning confirmation and those outlining the results of dismissal. For example, in *Matter of Depew*, 115 B.R. 965 (Bankr. N.D.Ind.1989), the court concluded that, notwithstanding the entry of a dismissal order, a lien may not be reinstated after confirmation because § 349(b):

> vacates only those orders or judgments which avoided various transfers or interests pursuant to the powers given to the trustee or debtor in possession by the Bankruptcy Code. *Furthermore, it operates only as to the property which remains property of the estate on the date of dismissal.* [cites omitted]. Except to the extent that the avoidance of an interest in exempt property is concerned, avoided pre-petition interests are not reinstated as to property which has passed out of the bankruptcy estate.

*Id.* at 972. [emphasis added].

This holding was premised in part upon the fact that confirmation of a chapter 11

plan "vests all of the property of the estate in the debtor." *See* 11 U.S.C. § 1141(b).[2] The *Depew* court therefore concluded that dismissal after confirmation did not act to reinstate a lien under § 349(b)(1)(B) "[s]ince the bankruptcy estate ceased to exist upon confirmation, [and] there was no longer any property of the estate as to which § 349(b) could operate." *Id.* The creditor who sought reinstatement of the priority of its lien could not succeed, as "[i]ts collateral had passed out of the estate just as effectively and just as completely as if it had been sold to a third party." *Id.*

 It is true that the bankruptcy code is not a "fragmented and disconnected collection of miscellaneous rules" but is instead "a complex tapestry of ideas." *Depew,* 115 B.R. at 969. However, there are several reasons why § 349(b)(1)(B) does not operate as suggested in *Depew.* First, the *Depew* court found the section's silence as to property which had been transferred out of the estate to be compelling, and inferred from that silence a limitation which has no real basis in the language of the section. Rather, § 349(b)(1)(B) simply provides for the reinstatement of *any* lien avoided under the specified sections. The Supreme Court has directed on numerous occasions that the "plain language" of a statute should control its interpretation. *See Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391, 397–98 (1992) ("We have stated time and again that courts must presume that a legislature says what it means and means in a statute what it says there."); *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290, 299 (1989) ("The plain meaning of legislation should be conclusive, except in the 'rare cases' [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.").

The only reference to "property of the estate" in § 349 is located in § 349(b)(3), which itself contains no language justifying a limitation upon § 349(b)(1)(B). Section 349(b)(3) provides that dismissal "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." Given the clear language of § 349(b)(1)(B), there is nothing in the code which necessitates the inference that the absence of any property of the estate at the time of dismissal would preclude lien reinstatement. Further, the cases which the *Depew* court cited in support of the proposition that confirmation and the resulting transfer of estate property to the debtor mandates a limitation upon lien reinstatement simply do not stand for this conclusion. Instead, they merely describe the operation of § 349(b)(3). *See Searles,* 70 B.R. at 270 ("The few cases that mention subsection 349(b)(3) refer to its applicability only in the context of property or property rights that have not passed out of the bankruptcy estate."); *United States v. Standard State Bank,* 91 B.R. 874, 879 (W.D.Mo.1988) (revesting includes only that property left in the estate at the time of dismissal).[3]

Finally, perhaps the most compelling reason weighing against acceptance of the *Depew* analysis is the Seventh Circuit's subsequent decision in *Sadler.* In *Sadler,* the court was faced with the dismissal of a confirmed chapter 13 plan, and yet held that § 349(b)(1)(B) nonetheless operated to reinstate a creditor's lien. 935 F.2d at 920. The court made no distinction between those cases involving a confirmed plan and those in which the debtor did not make it that far. Instead, in the course of its opinion, the court articulated the appropriate analysis of post-confirmation dismissals when it indicated that protecting the interests of other creditors might be sufficient "cause" to deny reinstatement. *Id.*

---

**2.** Chapter 12 contains an identical provision. *See* 11 U.S.C. § 1227(b).

**3.** In fact, when deciding the appeal in *Standard State Bank,* the Eighth Circuit found that the bankruptcy court's orders refusing to reinstate the government's priority status constituted a

finding of "cause" under § 349(b), a finding which would be unnecessary if the *Depew* court were correct in its approach to post-confirmation dismissals. *See U.S. v. Standard State Bank,* 905 F.2d 185, 187 (8th Cir.1990).

As has been noted previously, the court's burden upon dismissal is to protect rights acquired in the course of the bankruptcy. *Smith,* 155 B.R. at 148 n. 4; *Ething-ton,* 150 B.R. at 50; *Farm & Town Industries,* 518 N.W.2d at 343. If other parties gained a benefit pursuant to a confirmed plan which reinstatement of an avoided lien would detrimentally impact, the court could conceivably find "cause" to deny reinstatement; otherwise, the court need not tamper with the operation of § 349. *Sadler,* 935 F.2d at 921; *Jones,* 152 B.R. at 180. This interpretation of § 349(b)(1)(B) is not only in keeping with the plain language of the section, but also satisfies two of the court's obligations upon dismissal. It permits the court, on a case by case basis, to determine whether reinstatement of an avoided lien will harm any competing interests, and also prevents the debtor from obtaining a windfall as a result of the bankruptcy without the corresponding sacrifice. *Toronto,* 165 B.R. at 757; *Greenbelt Co-op.,* 124 B.R. at 471.

It is thus clear that in the normal course Grafe's judgment lien would be reinstated by the natural operation of § 349(b)(1)(B), and the parties would return to the position they were in prior to the filing of the chapter 12 proceeding. *Sadler,* 935 F.2d at 920; *Jones,* 152 B.R. at 180; *Ethington,* 150 B.R. at 50. To avoid this result, the debtors have raised several arguments. First, the debtors cite 11 U.S.C. § 524, arguing that once they obtained a discharge in their chapter 7 case, the effect of § 524(a) is to preclude reinstatement of the judgment. Second, they argue that the motion to reinstate the voided lien was not filed within a "reasonable time" after the dismissal of the chapter 12. Third, the debtors cite "equity," arguing that the parties entered into a stipulation regarding Grafe's claim in March of 1994, and suggest that Grafe is now seeking to avoid the effects of that stipulation. Finally, in their reply brief, the debtors argue that Grafe's motion

is improper because the "transfer" which was avoided was the judgment, not the lien, and that they should not have to pursue their remedies under the Wisconsin statutes pertaining to satisfaction of judgments because there is no judgment to satisfy or lien to void.

However, the debtors' arguments involve misunderstandings of not only the operation of § 349 but also other sections of the bankruptcy code and Wisconsin law as well. As to the debtors' argument that Grafe's delay in filing its motion somehow prevents reinstatement of its lien, the simple response is that § 349(b)(1)(B) operates to reinstate a lien *as of the dismissal* unless the court, "for cause," orders otherwise. Implicit from the *Sadler* decision is that the burden is upon the debtors to demonstrate an appropriate reason for not reinstating the lien. *See Sadler,* 935 F.2d at 920 ("The bankruptcy court did not find "cause" under § 349(b) and was never asked to."). The debtors never sought an order preventing reinstatement when they voluntarily dismissed their chapter 12 proceeding. The span of time between the dismissal and the filing of Grafe's motion is therefore inconsequential, as the debtors were required to act, not Grafe. Further, the debtors have utterly failed to demonstrate any prejudice resulting from the purported delay.

Next, the debtors' contention that the "transfer" in question is the judgment, not the lien, is premised upon an erroneous interpretation of § 547. To constitute a preferential transfer under § 547, there must be a transfer [4] of an interest in property of the debtor. *See* 11 U.S.C. § 547(b). As a leading authority on bankruptcy has stated, "[a]ny judicial proceeding that creates or fixes a lien upon the debtor's property will constitute a preference [provided the other elements of § 547(b) are met]." *See 4 Col-*

---

4. 11 U.S.C. § 101(54) states that:
 "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption.

This definition "is as broad as possible." *See* S.Rep. No. 989, 95th Cong., 2d Sess. 27 (1978). It includes any transfer of an interest in property, including a transfer of possession, custody, or control, as possession, custody and control are interests in property. *See* H.R.Rep. No. 595, 95th Cong. 1st Sess. 314 (1977).

*lier on Bankruptcy,* ¶ 547.03[1][A] at 547–20 (15th ed. 1995); *see also Norton Bankruptcy Law and Practice 2d* § 57:28 at 57–119 ("a judicial lien that attaches within ninety days of bankruptcy ... will be avoided under Code § 547"); *In re Martin,* 87 B.R. 394 (Bankr.E.D.N.C.1988) (judgment lien may be examined as preferential transfer); *In re Group Development Corp.,* 43 B.R. 665 (Bankr.M.D.Fla.1984) (same).

■ *Collier* further notes that the state law in question must be examined to determine what "act"—entry or docketing of the judgment, or issuance of execution—actually creates the lien, and indicates that "more commonly the judgment becomes a lien against real property when properly entered in a judgment docket or otherwise enrolled." *See Collier* at 547–21—547–22; *see also Norton* at 57–120 ("Whether the judicial lien arose during the 90–day period ... will be determined by state law as to when a lien by judicial process arises and is valid against the parties specified in Code § 547(e)(1)."). Thus, in a state in which the entry of a judgment does not of itself create a lien, the docketing of the judgment is a "transfer" for purposes of § 547(b). *See In re Lifchitz,* 131 B.R. 827, 832 (Bankr.N.D.Ill.1991); *In re Zimpel,* 106 B.R. 451, 452 (Bankr.E.D.Va. 1989); *In re Pouncey,* 59 B.R. 615, 617 (Bankr.M.D.Ala.1986).

■ In Wisconsin, a judgment itself does not constitute a lien upon property. *In re Spore,* 105 B.R. 476, 479 (Bankr.W.D.Wis. 1989); *see also French Lumbering Company v. Theriault and wife,* 107 Wis. 627, 633, 83 N.W. 927 (1900). A judgment is simply "the determination of [a legal cause of] action." Wis.Stat. § 806.01. Under Wis.Stat. § 806.10, at the time a judgment is entered, and "upon payment of the [required] fee," the judgment is entered upon the judgment docket. Once a judgment has been "properly docketed," it becomes a lien upon the property of the debtor located in the county in which it was docketed. Wis.Stat. § 806.15(1). The judgment may likewise be docketed in counties other than the one in which the judgment was entered, thereby becoming a lien upon the debtor's property located in that county as well. *See* Wis.Stat. §§ 806.13, 806.14, and 806.15(1).

■ It is clear that in Wisconsin Grafe's docketing of the judgment created the lien. It is unclear whether the same is true in Iowa, although it does appear that a judgment lien does not attach to property until properly recorded in the county in which the property is located. *See* Iowa Code § 624.24.[5] A judicial proceeding must create or fix a lien upon the debtors' property to constitute a preference. *Collier,* ¶ 547.03[1][A] at 547–20. Thus, as Grafe's mere taking of a judgment against Steven Derrick did not create the lien, it did not rise to the level of a "transfer" of an interest in the debtors' property. *Id.* Until the lien was created, there was no "transfer" of an interest in property.

■ Consequently, it was not the judgment which was voided in the adversary proceeding. The creation of the judgment lien (a transfer of an interest in the debtors' property) was found to be preferential, and avoided for the benefit of other creditors of the estate. *Sadler,* 935 F.2d at 921. After the avoidance of the lien, Grafe remained a creditor, albeit unsecured, and the error in the debtors' argument may clearly be seen in the fact that Grafe's claim against the debtors stemmed from the judgment, which was not voided or vacated in the course of the chapter 12 proceeding because the debtors did not receive a discharge. Given that the judgment lien was avoided under § 547(b), it

---

5. It appears that in Iowa a judgment becomes a lien upon the defendant's property "at the time of such rendition." Iowa Code § 624.23(1). However, this provision is limited to judgments "in the appellate or district courts of this state, or in the circuit or district court of the United States within the state." *Id.* Consequently, a foreign judgment does not become a lien until it is properly docketed, and in any event a judgment lien in Iowa does not attach to specific property outside the county in which the judgment was rendered until the judgment is "filed in the office of the clerk of the district court of the county in which the real estate lies." Iowa Code § 624.24; *see also Crawford v. Hall,* 464 N.W.2d 464 (Iowa App.1990). Given the foregoing, Grafe's judgment clearly did not become a lien on the debtors' Iowa property until it was properly recorded in Iowa.

constitutes a "lien" subject to reinstatement under § 349(b). Dismissal of the chapter 12 thus reinstated the judgment lien.

■ The debtors are also mistaken in their claim that § 524 somehow acts to preclude reinstatement of the judgment lien. As stated, the lien was reinstated at the time the chapter 12 was dismissed, absent a request to the contrary by the debtors.[6] Given that fact, Grafe held a judgment lien when the debtors filed their chapter 11 case; this lien remained when they converted the chapter 11 proceeding to chapter 7. Sections 524(a)(1) and (a)(2) provide an injunction against the pursuit of actions intended to determine or collect a discharged debt as a "personal liability" of the debtor, but they do not affect the validity of a lien against property in which the debtor may claim some interest. See In re Walker, 151 B.R. 1009 (Bankr.E.D.Ark.1993) (right of secured creditor to proceed against property in rem survives chapter 7 proceeding); In re Dillard, 118 B.R. 89 (Bankr.N.D.Ill.1990) (valid prepetition lien survives bankruptcy even if obligation that was basis for lien is discharged); In re Jackson, 74 B.R. 45 (Bankr.N.D.Ind. 1987) (§ 524 extinguishes the debt and the personal liability of the debtor, but does not affect a lien upon the debtor's property). As this Court observed in Spore:

> A discharge under section 524 of the Bankruptcy Code does not void a judicial lien in any respect; only sections 506(d), 522(f) or (g), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code can effectively void a judgment lien.... A discharge does not fail to void any aspect of a judgment; a discharge in bankruptcy voids all aspects of all judgments to the extent of the debtor's personal liability.

105 B.R. at 478.

There is some authority which would support the debtors' argument that a discharge in bankruptcy operates to void a judgment lien. See In re Thomas, 102 B.R. 199 (Bankr.E.D.Cal.1989); In re Duncan, 60 B.R. 345 (Bankr.M.D.Ala.1986); In re Doyon, 54 B.R. 810 (Bankr.S.D.1985). These courts appear to have based their decisions upon the theory that a judgment lien cannot exist independently from the judgment. Under this approach, when the judgment is voided as to the debtor's personal liability by operation of § 524, the judgment lien is voided as well. Thomas, 102 B.R. at 201; Duncan, 60 B.R. at 348. However, this analysis fails to take into account the long-standing concept that a discharge in bankruptcy extinguishes *only* the debtor's personal liability, and that the right to foreclose upon a lien survives the discharge. Johnson v. Home State Bank, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). As the Supreme Court in Johnson observed, "a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor in personam—while leaving intact another— namely, an action against the debtor in rem." 501 U.S. at 79, 111 S.Ct. at 2151, 115 L.Ed.2d at 75.[7]

■ While Johnson dealt with a mortgage rather than a judgment lien, it relied upon the definition of "claim" found in 11 U.S.C. § 101(5), which provides that a "claim" is a "right to payment" or a "right to an equitable remedy for breach of performance." The court noted that the mortgage holder retained a "right to payment" in the form of its right to the proceeds from the sale of the debtor's property. Id. Similarly, the creditor's right to foreclose may be viewed as a "right to an equitable remedy." Id. By the same definition, a judgment lien is a claim. In re Bursee, 142 B.R. 167, 168

---

6. It must be remembered that it was the *debtors'* obligation to demonstrate why the lien should not be reinstated. *Sadler,* 935 F.2d at 920. Grafe is not before this Court requesting reinstatement of its lien; rather, it is requesting judicial recognition of the fact that the lien was reinstated by operation of § 349(b)(1)(B).

7. Although this might facially appear in conflict with *Spore*'s comment that "a judgment does not consist of an 'in rem' aspect and an 'in person-am' aspect," *see* 105 B.R. at 480, there is actually no conflict at all. The judgment, which is voided as to the debtor's personal liability by § 524, is not the source of the creditor's in rem rights. Rather, it is the judgment *lien* which creates such rights. *See Johnson,* 501 U.S. at 83, 111 S.Ct. at 2153, 115 L.Ed.2d at 74 ("[T]he Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy.").

(Bankr.N.D.Ohio 1992). Liens pass through bankruptcy unavoided. *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). A judgment lien therefore survives the discharge. *In re Walls*, 125 B.R. 908, 909 (Bankr.D.Del.1991); *In re Andrews*, 22 B.R. 623 (Bankr.D.Del.1982); *In re Clowney*, 19 B.R. 349 (Bankr.M.D.N.C.1982); *see also* 3 *Collier on Bankruptcy* ¶ 524.02[1] at 524–17—524–18 (15th ed. 1995). Thus, to the extent that a judicial lien is created prior to a debtor's discharge, post-discharge actions *in rem* are permissible against the property subject to the lien. *Matter of Paeplow*, 972 F.2d 730, 735 (7th Cir.1992); *In re Hunter*, 970 F.2d 299, 310 (7th Cir.1992).[8]

█ In this case, Derrick's personal liability to Grafe on the judgment was clearly extinguished by the entry of the discharge. *Johnson*, 501 U.S. at 84–85, 111 S.Ct. at 2154–55, 115 L.Ed.2d at 75. However, while Grafe may not pursue Derrick personally on its claim, the reinstatement and enforcement of its judgment lien does not have this effect. Rather, it resuscitates *in rem* rights Grafe held prior to the initiation of the chapter 12. These rights spring from the existence of the lien, not the judgment. *See Spore*, 105 B.R. at 480 ("a judgment does not consist of an '*in rem*' aspect and an '*in personam*' aspect"). Pursuant to the clear language of § 349(b)(1)(B), these lien rights were reinstated upon dismissal absent a showing of "cause." These rights survive the debtors' subsequent discharge in the chapter 7 case and remain enforceable against the property. *Paeplow*, 972 F.2d at 735; *Walls*, 125 B.R. at 909. Accordingly, Grafe is entitled to assert its *in rem* rights and its judgment lien to the extent permitted by state law.

As Grafe concedes, there may be debate regarding the continued validity of this lien under Wisconsin law. *See Spore*, 105 B.R. at 485 (order of satisfaction granted by Wisconsin court as a result of bankruptcy discharge resulted in voiding of judgment lien). However, the debtors have not demonstrated compliance with Wis.Stat. §§ 806.19 and 806.21, the Wisconsin statutes concerning the satisfaction of judgments, and in fact admit that they have not sought the issuance of a satisfaction of judgment in state court. Given the debtors' failure to comply with the necessary state provisions, the issue of the lien's continued validity is not presently before the Court.

█ Additionally, Grafe's lien is also docketed in Iowa, which has a different statutory scheme concerning satisfaction of judgments. It appears that under Iowa law a discharge in bankruptcy does not result in the voiding of a judgment lien, although the lien may not attach to the debtors' subsequently acquired real estate. *See* Iowa Code § 624.23(3). However, these issues can and should be decided in state court, if and when Grafe initiates proceedings to enforce its lien. Furthermore, the possibility that the lien *may* be void under state law does not rise to the type of "cause" required by § 349(b). These issues, which are in essence defenses to enforcement of the lien, are not an "acceptable reason" to prevent lien reinstatement because they do not implicate the type of interests which a court is to protect under § 349(b)(1)(B). *Sadler*, 935 F.2d at 921.

Finally, the debtors cite equity and the stipulation entered into between the parties. However, in their reply brief the debtors clearly state that Wisconsin contract law will control the interpretation of this stipulation. Given that fact, there is little reason for this Court to decide an issue the state courts can dispatch with relative ease. Further, this is a dispute which may be resolved if and when Grafe acts to enforce its lien; it has nothing to do with the reinstatement of that lien. As with all of the debtors' other reasons why this Court should deny reinstatement of the lien, this argument is nothing more than a defense to the enforcement of the lien. Essentially, the debtors argue that because the lien should no longer be valid, it should not

---

8. Indeed, this conclusion is only bolstered by the fact that, prior to 1984, § 524(a)(2) operated as an injunction against the commencement or continuation of an action to collect a discharged debt "as a personal liability of the debtor or from property of the debtor." The reference to "property of the debtor" was removed by the 1984 amendments to the code, apparently in an effort to clarify congressional intent that post-discharge actions to enforce valid liens were not prohibited. *Hunter*, 970 F.2d at 310.

be reinstated. But that is not the inquiry the Court must make. Instead, the Court must determine whether there are any interests acquired in reliance upon the debtors' chapter 12 case which must be protected. *Sadler,* 935 F.2d at 921; *Ethington,* 150 B.R. at 50. The Court concludes that there are no such interests. In fact, to honor the debtors' request would do nothing more than provide the debtors with a windfall. *Toronto,* 165 B.R. at 757.

■ Were there other creditors protesting the reinstatement of Grafe's lien, the equities might be different. Here, however, the debtors decided, for whatever reason, not to continue their chapter 12 proceedings. They may not retain the benefits of that proceeding if they are unwilling to make the sacrifices associated with it. *Smith,* 155 B.R. at 148 n. 4; *Jones,* 152 B.R. at 182. It is true that it could be argued that the debtors' subsequent refiling after the dismissal of their chapter 12 justifies preserving the lien avoidance. *Toronto,* 165 B.R. at 757. However, the mere act of refiling does not amount to "cause." There must be interests worthy of protection. *Sadler,* 935 F.2d at 921. The debtors have not demonstrated how any creditors would benefit from an order precluding reinstatement. Further, no creditors have appeared to contest the reinstatement. The only parties objecting to reinstatement are the debtors, who may well gain a windfall despite failing to perform under their plan. *Toronto,* 165 B.R. at 757; *Greenbelt Co-op.,* 124 B.R. at 471. As between the debtors and Grafe, Grafe has the superior interest, and the debtors have failed to produce an acceptable reason to alter the natural impact of § 349(b)(1)(B). *Sadler,* 935 F.2d at 921. Quite simply, Grafe's lien was reinstated by the dismissal of the debtors' chapter 12 proceeding, and there is no good "cause" to prevent that reinstatement. All of the debtors' defenses to the enforcement of the lien may be raised if and when Grafe attempts to do so. Consequently, the judgment which avoided Grafe's judicial lien is vacated.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.