**In re Philip & Agatha ELMES, Debtors.**

No. 01–25244.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Feb. 12, 2003.

Joseph E. Cohen, Cohen & Krol, Chicago, IL, for debtor.

Leonard Groupe, Groupe & Katz Ltd., Northbrook, IL, trustee.

## *MEMORANDUM OPINION*

BRUCE W. BLACK, Bankruptcy Judge.

There are times when a fine line exists between enforcing a lien that survived the bankruptcy process and violating the bankruptcy discharge injunction by attempting to collect and recover a discharged debt. At first blush, the actions of the creditor in this Chapter 7 case seem to teeter on such a line. The matter is before me on two motions filed by the debtors. The first is a motion for an order of contempt against Phyllis Sherlock and Arnold M. Flank. The second is a motion to avoid the lien of Phyllis Sherlock. The facts relevant to the pending motions are not in dispute.

**1.** The attorney, Arnold M. Flank, has been named, along with Sherlock, as a respondent in the contempt proceeding that debtors have filed in this Court. Although the parties have not raised it, a possible issue is whether Mr. Flank should be disqualified pursuant to Lo-

## FACTS

Phyllis Sherlock ("Sherlock") obtained judgment against the debtors in the Circuit Court of Cook County on June 29, 2000. In the months prior to the filing of this bankruptcy case, Arnold M. Flank, counsel for Sherlock in both the circuit court and this court, engaged in substantial efforts to collect on Sherlock's judgment.

After assisting Sherlock with obtaining a deficiency judgment against the debtors, Attorney Flank caused to be issued a citation to discover assets against them on behalf of his client. Debtor Philip Elmes appeared in state court to be examined in accordance with the citation on June 11, 2001. An order was entered pursuant to the citation on June 25, 2001 directing the debtors to, among other things, collaterally assign two life insurance policies to Sherlock.

Not yet having collaterally assigned the life insurance policies to Sherlock in compliance with the June 25 order, the debtors commenced this Chapter 7 case by filing a voluntary bankruptcy petition on July 18, 2001. Sherlock was listed twice on the debtors' schedule F as an unsecured, nonpriority claimant holding two separate claims, one for $450,000 and the other for $27,000. Neither claim was described as contingent, unliquidated, or disputed. The debtors claimed an exemption in the insurance policies at issue pursuant to 215 ILCS 5/238.

Attorney Flank appeared at and participated in the meeting of creditors held pursuant to section 341 of the Bankruptcy Code on behalf of his client.[1] The debtors

cal Rule 83.51.7 of the District Court, from representing Sherlock in the contempt action. On policy grounds, I decline to disqualify him, because I do not believe that one attorney should be able to remove an opposing attorney merely by accusing the opponent of

took no action to avoid liens pursuant to Bankruptcy Code § 522(f), or any other section, while the bankruptcy case was first pending. The debtors received a discharge on November 6, 2001, and their case was closed on March 26, 2002.

On May 21, 2002, approximately two months after this bankruptcy case was closed, Attorney Flank presented a "Petition for Rule to Show Cause" to Circuit Judge John K. Madden in the Circuit Court of Cook County, Illinois, asking that the debtors "be held in contempt for failing to comply with the Turnover Order of this Court entered June 25, 2001, and for failing to Turn Over to Movant the insurance policies described in the Order of June 25, 2001 and for failing to sign the forms of Collateral Assignment of Insurance Policy." This petition is hereinafter referred to as the State Court Contempt Proceeding.

The debtors in turn filed in their bankruptcy case a motion for order of contempt against Sherlock and her attorney, charging that the State Court Contempt Proceeding was "an attempt to collect and recover a debt that has been discharged," in violation of section 524 of the Bankruptcy Code. The motion seeks: (1) a determination that Sherlock and her attorney "are in civil contempt of this Court;" (2) an injunction barring them from any further action in the State Court Contempt Proceeding; and (3) a mandatory injunction requiring them to withdraw with prejudice the State Court Contempt Proceeding. This motion is hereinafter referred to as the Bankruptcy Contempt Motion.

At the initial hearing on the Bankruptcy Contempt Motion, the debtors were directed to file a motion to reopen the bankruptcy case before I would hear the motion. The debtors complied, and on June 18,

2002 an order was entered reopening the bankruptcy case. The debtors then filed the pending motion to avoid Sherlock's judicial lien on June 27, 2002.

## DISCUSSION

### I. INTRODUCTION

Several themes are common to both motions, and I will address them first.

 The parties are not precise or consistent when referring to the assets at issue. Sometimes they refer to the "life insurance policies." Other times they talk about the "proceeds from the life insurance policies." And on schedule C, the claim of exemption, the debtors describe the policies to be exempted in terms of their face values, $100,000 and $6,000, but they value them at $3,500 and $600, the cash surrender values. Because the judgment lien pursuant to the citation to discover assets attaches to all property of the debtors, and because the claimed exemption statute, 215 ILCS 5/238, includes both proceeds and cash surrender value, I will consider the lien here to have attached to all of the debtors' interests in the policies. Moreover, in keeping with the general requirement that exemptions be liberally construed in favor of the debtors, I will consider the claims of exemption to be similarly broad in scope. *In re Bateman*, 157 B.R. 635, 639 (Bankr.N.D.Ill.1993)

 In response to both motions, Sherlock now questions the validity of the debtors' claimed exemptions. She did not object at the proper time, however, and the law is clear that the exemptions must be deemed valid. *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992); *In re Kazi*, 985 F.2d 318, 320–21 (7th Cir.1993); *In re Chinosorn*, 248 B.R. 324 (N.D.Ill.2000).

contumacious behavior in the prosecution of legal proceedings.

Sherlock also argues in response to both motions that Judge Madden's order of June 25, 2001 terminated the debtors' interests in the policies. In her response to the Bankruptcy Contempt Motion, Sherlock argues that the debtors "did not have any property rights in both of the insurance policies at the time they filed their Petition in Bankruptcy and, consequently, the Debtors had no right to claim those assets as exempt." She characterizes the June 25, 2001 order as a "turnover order" the effect of which was to make Sherlock "the owner" of the policies. Sherlock's response to the lien avoidance motion contains the argument that the relief sought by the debtors:

> "will not remedy or cure the problems which the Debtors seek to address in their Motion. This is because the Debtors have not addressed, or sought to vacate, the transfer of rights from Debtors to Ms. Sherlock, which occurred as a result of the Turnover Order entered June 25, 2001. Entry of this Order caused Ms. Sherlock to become a secured creditor of the debtors, regardless of the failure of the Debtors to perform the ministerial task of signing the documents."

■ I conclude that Sherlock fundamentally misstates the effect of the June 25, 2001 order as it deals with the life insurance.[2] The order says that debtors:

> "are directed to Collaterally Assign to [Sherlock] the rights of the [debtors] in certain policies of insurance [describing them]. [Debtors] are to sign such forms and documents, and perform such acts,

as may be required by the insurer in order to provide that, as and at the date of death of either or both of the [Debtors], [Sherlock] will receive such portion, or all, of the proceeds of either or both of said policies as may be necessary to satisfy the unpaid portion of the Judgment entered by this Court on June 29, 2000.[3]"

The order does not expressly order the debtors to surrender the physical custody of the policies to Sherlock. Nor does the order give Sherlock unlimited rights to the proceeds of the policies. Indeed, Sherlock's right to a portion of the proceeds is expressly limited to an amount "as may be necessary to satisfy the unpaid portion of the Judgment." Clearly, the debtors retained the right to receive any proceeds beyond those necessary to satisfy the judgment. Consequently, any characterization of the June 25, 2001 order as a turnover order which extinguished all of the debtors' rights in the policies must be rejected.

## II. DEBTORS' BANKRUPTCY CONTEMPT MOTION

■ To rule on the debtors' Bankruptcy Contempt Motion, I must decide whether the filing of the State Court Contempt Proceeding after the debtors' bankruptcy discharge is a violation of the permanent injunction provisions of the Bankruptcy Code. To resolve this issue, I begin with Section 524,[4] which describes the protections afforded a debtor through a bankruptcy discharge. Pursuant to Section 524(a)(1), a discharge voids any judgment obtained with respect to a discharged debt

---

**2.** The June 25 order explicitly required debtors to turn over to Sherlock their interest in a 1996 Jeep Cherokee Sport. Debtors complied with that portion of the order, leaving only the life insurance at issue.

**3.** The amount of that judgment was approximately $20,000.

**4.** 11 U.S.C. § 524. Any reference to "Section" found within this Opinion refers to the Bankruptcy Code, 11 U.S.C. § 101 et seq., unless another reference is stated.

to the extent such judgment inflicts personal liability on the debtor.

■ Equally important to this analysis is Section 524(a)(2), which states that a discharge operates as an injunction against the continuance of an action to collect or recover any discharged debt as a personal liability of the debtor. Because the provisions of Section 524 apply only to the personal liability of the debtor, they do not affect an otherwise valid pre-petition lien on debtor's property. A bankruptcy discharge extinguishes only the debtor's personal liability, and the right to foreclose a lien survives the discharge unless the lien is effectively voided through the bankruptcy process. See *In re Derrick*, 190 B.R. 346 (Bankr.W.D.Wis.1995).[5]

Consequently, if the State Court Contempt Proceeding is the continuation of an action to collect a personal liability of the debtors which has been discharged through this bankruptcy proceeding, the action would violate Section 524, and sanctions against Sherlock may be appropriate. Conversely, if Sherlock's action is properly seen as an attempt to enforce a judicial lien which survived the discharge, Section 524 is not violated, and the debtors' Bankruptcy Contempt Motion should be denied.

■ Several sections of Illinois law dealing with supplementary proceedings are relevant to this case. An Illinois judgment creditor may commence supplementary proceedings against a judgment debtor by serving a citation to discover assets against the debtor or a party holding the judgment debtor's assets. 735 ILCS 5/2–1402(a). The debtor or the third party is compelled to apply the discovered assets to satisfy the judgment if an appropriate court order is entered. 735 ILCS 5/2–1402(c). In particular, the court may or-

der any person, which would include the judgment debtor, to execute an assignment of any conveyance of title to personal property in order to enforce payment of a judgment. *Id.*

■ Before such order may be entered, a hearing must be held at which any interested party may assert a right to the discovered assets. Ill. Sup.Ct. Rule 277(e). A party holding property subject to a citation to discover assets is under no obligation to deliver the property to the judgment creditor until the order is entered. See *In re Weatherspoon*, 101 B.R. 533, 541 (Bankr.N.D.Ill.1989). The judgment becomes a lien on the nonexempt personal property of the debtor when the citation to discover assets is served. 735 ILCS 5/2–1402(m).

■ Any person who fails to comply with a court order issued in connection with a citation to discover assets may be punished for contempt. Ill. Sup.Ct. Rule 277(h). The governing rule specifically provides that "[a]ny person who refuses to obey any order to ... assign ... any personal property ... may be committed until he has complied with the order or is discharged by due course of law. The court may also enforce its order against the real and personal property of that person." *Id.*

■ Here it is clear that Sherlock instituted the State Court Contempt Proceeding due to debtors' failure to obey the June 25 court order. The Illinois Supreme Court has defined civil contempt proceedings as "those prosecuted to enforce the rights of private parties and to compel obedience to orders or decrees for the benefit of opposing parties." *People ex rel. Chicago Bar Association v. Barasch,*

---

**5.** The *Derrick* court recognized that only code sections 506(d), 522(f) and (g), 544, 545, 547 through 549, and 724(a) effectively void judgment liens.

21 Ill.2d 407, 409, 173 N.E.2d 417 (1961). The difference between civil contempt proceedings and criminal contempt proceedings is thoroughly discussed in *In re Benalcazar*, 283 B.R. 514, 529–33 (Bankr. N.D.Ill.2002). Here the parties agree that the State Court Contempt Proceeding against debtors is civil in nature.

So the question remains: Was Section 524 violated here, or is the State Court Contempt Proceeding simply an attempt to enforce Sherlock's lien through the only means available under Illinois law?

Two opinions from the Court of Appeals for the Seventh Circuit construing a 1984 amendment to Section 524 shed light on this question. Prior to 1984, Section 524 provided that a discharge "operates as an injunction against the commencement or continuation of an action ... to collect ... any such debt as a personal liability of the debtor or from property of the debtor." 11 U.S.C. § 524(a)(2) (1979). The section was amended in 1984 to exclude the phrase "or from property of the debtor." The Seventh Circuit had opportunity to examine this amendment twice in 1992, first in *In re Hunter*, 970 F.2d 299 (7th Cir.1992), and then in *In re Paeplow*, 972 F.2d 730 (7th Cir.1992). The Court was faced in both cases with post-discharge actions seeking to preclude creditors from taking further action with respect to property held by Chapter 7 debtors and their spouses in tenancy by the entirety. Although Section 524 was before the Seventh Circuit in a slightly different context, that court's analysis and interpretation of the 1984 amendment are equally applicable here.

The *Hunter* opinion describes the purpose of the amendment as follows:

> The purpose of the amendment was to clarify that discharge precludes only *actions to establish personal liability*, not actions to enforce a lien against property of the debtor. Cases and commenta-

tors agree that Congress intended to resolve the apparent inconsistency between section 524(a)(2) and other portions of the Code, such as section 506(d)—which allows certain liens to pass through bankruptcy unaffected— and section 522(c)(2)—which states that exempt property is still subject to certain liens....

*In re Hunter*, 970 F.2d at 310 (citations omitted). The Court in the *Paeplow* opinion explains further that:

> The 1984 amendment, then, was designed to make a clarification: while creditors are enjoined from seeking to collect on the pre-petition liabilities of a discharged debtor, creditors are not prohibited from executing a judgment lien against a discharged debtor's property, as long as the judgment was obtained before discharge.

*In re Paeplow*, 972 F.2d at 735 (emphasis omitted).

 Here, I find that the principal relief Sherlock was seeking when she filed the State Court Contempt Proceeding was an order compelling debtors to take the steps necessary to collaterally assign the insurance policies. There was no specific request to impose a money judgment against, or to impose personal liability on, debtors for their failure to assign the policies. In fact, personal liability had already been imposed on the debtors prior to the bankruptcy filing through the entry of the deficiency judgment which gave rise to the lien that was created in Sherlock's favor through the citation proceeding. The purpose of the State Court Contempt Proceeding was to cause Sherlock's lien to be satisfied from the insurance proceeds.

The State Court Contempt Proceeding, then, was part of Sherlock's effort to enforce her lien against debtors' property (the life insurance policies) through the

only means available to her under the Illinois rules regarding supplementary proceedings. Sherlock did not request, and there is nothing before me to show, that the state court would have imposed personal liability on debtors for failure to comply with its order to collaterally assign the policies. Because there was no attempt to impose personal liability on the debtors, I specifically find and conclude that Attorney Flank and Sherlock did not violate the discharge injunction of Section 524(a)(2) through the filing of the State Court Contempt Proceeding.

### III. DEBTORS' MOTION TO AVOID LIEN

Debtors move to avoid Sherlock's lien under Section 522(f)(1)(A), which provides, in pertinent part that:

"the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under [11 U.S.C. § 522(b)], if such lien is—

 (A) a judicial lien...."

■ This section permits a debtor to avoid a lien if four requirements are met: (1) the lien is a judicial lien; (2) the debtor has claimed an exemption in the property under Section 522; (3) the lien impairs the exemption; and (4) the debtor has an interest in the property. *In re Johnson*, 53 B.R. 919, 922 (Bankr.N.D.Ill.1985).

■ The parties agree that the lien under 735 ILCS 5/2–1402(m) is a judicial lien. Further, as discussed above, the debtors have claimed exemptions, and they are deemed to be valid. The parties disagree about the remaining requirements.

Sherlock appears to argue that there is no impairment of the exemptions because the debtors have not complied with Section 522(d)(11)(c) or with 735 ILCS 5/12–1001

(h)(3). This argument fails because, among other reasons, the debtors claimed their exemptions under a different Illinois statute, 215 ILCS 5/238. Moreover, allowing this lien to stand clearly would impair the exemptions to some extent because the scope of the exemption covers the entire proceeds from the two policies as well as the cash surrender values. *In re Bateman*, 157 B.R. 635, 637 Bankr. N.D.Ill.(1993).

Finally, as discussed above, the debtors clearly have an interest in the policies and proceeds. Accordingly, all of the requirements under Section 522 are present.

Sherlock offers another substantial argument against the motion to avoid the lien. She argues that she has been prejudiced by the delay between the date of the debtors' discharge and the filing of the motion to avoid the lien. She cites a line of cases regarding whether to re-open a bankruptcy case for the purpose of filing a motion to avoid a lien. See *In re Bianucci*, 4 F.3d 526 (7th Cir.1993). Those cases are not strictly on point here because Sherlock did not contest the motion to re-open the case, albeit for a different purpose. Nevertheless, I do not believe the delay here was sufficient to require denial of the debtors' motion.

### IV. CONCLUSION

Now that the lien has been avoided, I must note that Sherlock may not proceed with the State Court Contempt Proceeding, because there is no longer a lien to enforce. In *In re Benalcazar*, 283 B.R. 514 (Bankr.N.D.Ill.2002), Judge Wedoff determined that a civil contempt proceeding was a violation of the automatic stay under Section 362. Similar reasoning would appear to apply as well to the discharge injunction under Section 524. Consequently, the only viable state court remedy open to Sherlock would appear to be a

criminal contempt of court proceeding for violating the June 25, 2001 order.

In summary, the debtors' Bankruptcy Contempt Motion is DENIED. The debtors' motion to avoid the Sherlock lien is GRANTED. A separate order will be entered.